Good morning, Catherine DiStefano representing the petitioner Aaron Solis-Tadeo. And I'd like to begin by addressing the supplemental authorities that were not included in our briefing. There are two cases, Upal and Hernandez-Cruz, that have been decided since briefing closed. And both cases held that because the BIA erred in determining the offense the petitioner was convicted of committing at Step 1 of the analysis, the BIA's crime-involving moral turpitude analysis at Step 2 merited no deference. For the same reason in this case, because the BIA erred in determining that Mr. Solis was convicted of assault with a deadly weapon, a charge that was dismissed, the BIA's crime-involving moral turpitude analysis is entitled to no deference under Skidmore. In Upal, this Court withdrew and superseded a decision that was relied upon by the government in the response brief. And this is important because it is a controlling case and controls the outcome in this case. The Court held that an assault statute not involving a specific intent to injure or a special trust relationship and not requiring that the assault cause death or even serious bodily injury cannot qualify as a categorical crime-involving moral turpitude. The statute in Upal did not require a specific intent to injure and only required that a reasonable person would know that the assault carries a risk of bodily injury or endangerment, which is a negligence standard. And this fell short of the evil intent typically required for crime-involving moral turpitude. How do you deal with the government's supplemental authority indicating that the California courts are now not viewing this statute as allowing for a negligent act of culpability? Are you referring to Elwell? Yes, I believe so. Well, Elwell addressed whether a conviction is admissible for impeachment purposes under a State law standard. And this does not control this Court because it addresses a different standard. This Court is bound by the law of the circuit regarding the Federal standard under the Immigration and Naturalization Act, which is the rule in Upal. The consequences of impeaching someone's testimony with a prior conviction are very different than the consequences of removing a lawful permanent resident. It's a completely different context, and for that reason the two standards are not comparable. Have you had an opportunity to look at the case that was cited in the letter that we Grajeda was deciding whether 245A1 is a crime of violence. And the mens rea standard for a crime of violence is different than that required for a crime-involving moral turpitude. In that case, they were looking at whether the statute required intentional use of force. And in Upal, this Court considered whether intentional – some intentional act, some intentional use of force was sufficient to meet the moral turpitude standard, and the Court concluded that it was not. The Canadian statute in Upal also required some intentional use of force, but the Court concluded that specific intent to injure is what is required under the moral turpitude standard. Well, what I took from Grajeda was that there wasn't a difference in the mens rea or the   Now, if the intent to injure was to use a deadly weapon or assault by means of force, that could have reduced great bodily injury. I understand that concern, crime of violence, as opposed to a crime involving moral turpitude. But if the focus or if the concern is with the intent requirement, and we do have the same intent requirement as the crime for which Petitioner or your client's name, Mr. Solis-Tadeo, was convicted, is there a problem? I think you're right that both offenses under 245a1 have the same intent requirement under Williams. The difference is that assault with a deadly weapon includes this aggravating factor that was discussed in Upal. Upal acknowledged that a deadly weapon is an aggravating factor that would be a crime involving moral turpitude, but distinguished deadly weapons cases from other assaults that do not have that aggravating factor. And the other important component in addition to the intent is the level of harm. And in Upal, because the statute required only endangering the life of the victim, which did not require any actual physical injury, the degree of harm was insufficient to show moral turpitude. In this statute, there is no physical contact with the victim or any physical injury required. So I would say that's another difference. I think we have your argument at hand. Do you want to save some time for rebuttal? Yes. I would like to save the rest of my time for rebuttal unless you have any other questions. Thank you. Good morning, Your Honors. And may it please the Court, Michael Heiss on behalf of the Respondent, the Attorney General of the United States. On the point that counts in this case, the Board got it right. Yes, as Your Honor pointed out, the Board perhaps cited the wrong offense. But the ultimate determination is correct, that this is categorically a violent crime involving moral turpitude. And to that specific point, in People v. Aguilar, which is cited in our brief, pages 19, 20 and 23, the Court, California State Court, stated that the jury's decision-making process in an aggravated assault case under Section 245, Subdivision A1, is functionally identical regardless of whether, in a particular case, the defendant employed a weapon alleged to be deadly as used or employed force likely to produce great bodily injury. In either instance, the decision turns on the nature of the force used. And that's what we have here. We have an intentional violent act that is intended to cause great bodily injury. Whether it did or not is irrelevant. And ultimately, that is what is entitled to deference, which is based on nearly 70 years of case law that the Board relied on and including this Court has cited. What is it we should defer to? Frankly, I don't disagree with the fundamental proposition that this ought to be identified as a crime involving moral turpitude. But I don't know. I mean, that's not for us to decide in the first instance. I'm not sure what we can look to to say that it's been decided. Right. It's interesting, in this case, the Court actually seems to have a number of options here. As the Court acknowledged in Marmolejo Campos, the term crime involving moral turpitude is the quintessential example of an ambiguous phrase. So then it becomes, well, what does that mean? What happens? And there's been, obviously, actually, subsequent to that in Nunez, the Court said that the case law in this area is inconsistent and incoherent. So it's definitely a confusing situation when you're presented with a situation such as this where it does appear that the Board got it wrong, which is why we suggested remand in the first instance. But the ultimate point is that the crime, as it's discussed in People v. Aguilar, is a violent crime involving moral turpitude. You did suggest remand, and it may be a good option on that. I mean, you're in a tough spot because you're stuck with what the Board did. Right. And if we're applying deference appropriately, we can't defer to a mistake. Well, what the Court would be deferring to. Or what we thought they were trying to do. Exactly. What the Court would be deferring to would be the prior published Board decisions that state that this specific statute does, or conviction under this statute, constitutes a crime involving moral turpitude. And that would be a matter of GR from 1946. It's actually the first time I've seen a 2INN cite. I'm sorry. 2INN decision 733 from 1946 was citing this specific statute. The other one. Go ahead. Sorry. Part of the difficulty of reaching back very far in time, and we have this with our own cases, is before the categorical approach is imposed upon all of us, it – again, I just – is there anything else you can point to that we can say that could anchor a decision with regard to something that the VIA in a published presidential opinion has spoken to, or that our Court has spoken to, given that for at least a period of time, this section of the California Penal Code was treated as being as if there were different varieties of the offense. It may be that they're now merging back together. But that's – with an ambiguous phrase like moral turpitude, it's just kind of hard to figure out how to navigate to the result you're seeking. Certainly. This is definitely – like I mentioned earlier, there seems to be a lot of options here. And if that doubt lingers, if there is, in fact, any perceived difference, despite the clear statement of People v. Aguilar, that there is no difference, if there isn't – if the Court has any lingering doubt, it should certainly remand to the lower court to make that determination. And it may be, even if we were convinced of your position, that we'd have to remand anyway. I mean, we have to be a little bit consistent. I know the government's taken a very consistent approach, saying, look, if you're thinking of awarding relief, you shouldn't do that. You need to remand under Ventura. And it seems to me probably the same situation applies when the shoe's on the other foot. I mean, what I anticipate your opponent's going to say is, look, we have a whole bunch of things. We'd like to argue to the board about this. And probably the government will say, well, all right, let's – if it's not a categorical – if it turns out it really doesn't categorically qualify, then we'll want to put on evidence on the modified categorical approach. Well, I think the critical difference does stem from that, because while the categorical or modified categorical approach might be applied also with the matter of Silva-Trevino factor, that really doesn't come up here unless, I would say, unless this case is remanded. But that aside, that ultimately gets back to the point that the court – or the board is deciding whether this is a crime involving moral turpitude. And that determination itself is something that is entitled to substantial deference that this Court has consistently stated that the board needs to draw on its expertise in making that determination. Because it's distinct from a straight criminal statutory analysis. It's a – as the Court said in Marmalare-Campos, an ambiguous phrase. And it's – it employs its expertise on that. And there's a difference – not to interrupt. But I think that there's a difference when the board decides what a crime of moral turpitude is and when the board is construing a state criminal statute. And when the board is construing what a state criminal statute means, and we don't owe any deference to the boards, what we do owe deference to is what the California courts have defined it to be. Yes. And this Court as well. And that's what the board relied on in addition to its own case law. And part of the – this is purely editorializing. But part of the problem is that we have these categories like crime of violence and moral turpitude where it's sort of a Venn diagram. Exactly. Some of the defenses overlap. It would be nice if there were nice defined boundaries, but there aren't. It would be. But again, that goes back to why the board should have the opportunity here to determine if there is – again, if there is any doubt. I do not believe there is based on the strong case law behind the board's decision despite its misstatement or perhaps incomplete statement as to exactly what Mr. Solis was convicted of. But the point is the board needs to have the opportunity to determine if there is that division, if there is any separation between the two crimes, as it were, even though it seems to me there's only one. But if there is any doubt, then they need to have the opportunity in the first instance to address that division based on what this Court stated in Mar-a-Malejo Campos. But nonetheless, this Court, again, can be applying the categorical approach to this case, which is a matter of law that it can review de novo. So it can go ahead and say, yes, this is categorically a crime involving moral turpitude if it wants to be consistent with itself, such as in Gonzalez v. Barber where it said the same thing. And that's, again, another aged case that cited Weeding v. Yamada, which was from 1925, which I also provided in a 28-K letter. And I do apologize for the proliferation of the 28-K letters. No, that's fine. We're happy to get them. But the ultimate point being that this is a serious crime, that this is not simple touching. This is not a battery. This is an intentional violent act. And that is what is required for a conviction. That's what the Court analyzed, this Court analyzed in Grajeda, that this is categorically a crime of violence. And, yes, while that's a different term of art, it's still relevant. It certainly informs the Court as to the serious nature of this crime. And what the State considers, it considers to be a very serious crime involving moral laxity and a readiness to do evil. And that was cited in People v. Elbow, another 28-K letter. This is not a simple assault case. And that was what the Court was envisioning in Upholst. The problem there was the Canadian statute really was ultimately just an assault, just a regular simple assault. And while that's a terrible thing to assault someone, it's not aggravated assault. And that's specifically what the Court was, the State court, excuse me, this Court, no, back up, it was the State court, in People v. Again, People v. Aguilar, that this is considered aggravated assault. This is not simple assault. And so while the Board may have made a misstatement, the ultimate conclusion is correct. And thus ---- Even if we agreed with you on that, that it should be viewed categorically, why shouldn't the Board be given the chance to make that decision, even if one can anticipate that it's likely that that's the decision it will reach? This Court has, and also other circuits, have recognized the principle of futility of remand. We would encourage remand just to honor the principles announced in Ventura and subsequent cases, Gonzalez v. Thomas, as well, that the Board should have the first opportunity to make these kinds of determinations. But here, which road to take? There are so many options in terms of the categorical approach, the modified categorical approach, and deference. Everything that all comes together here is a very confusing question of law with facts involved in it. But ultimately, we have a conviction under a State statute that is clearly a very violent crime. That provides this Court the opportunity to reach that determination. And I believe, I'm not sure, I believe Mr. Solis is still detained, so that might be a factor the Court would like to consider in terms of expediting him. Yes. Well, I think the Petitioner's best argument, if I understand it, against categorically considering this as a crime of moral turpitude is it doesn't require actual contact, and at least arguably, and I recognize your authority, embraces negligent conduct. How do you respond to that? Well, the Court in Grajeda flatly and directly addressed that negligence is not the standard that applies here. And People v. Williams was the Supreme Court of California stating, while this might appear to be a negligent standard, it in fact is not, and requires an intentional act. So how about the first point? In terms of the actual injury required, the Board has, on several occasions, and in I believe it was a matter of Medina that the Board cited here, that was an attempted crime. So there wasn't actually any contact there. It was a matter of Lopez Meza. It was an aggravated driving under the influence charge. There doesn't necessarily have to be an injury, and that's what the Court was discussing in the subsequent Uppal case, was it needs to be an aggravating factor. There didn't necessarily have to be injury. That might have helped in Uppal if the Canadian statute required injury, despite it not being a serious injury. That was basically just a battery or a simple assault. This statute arguably doesn't require any contact at all? No. No, it does not. It just requires an intentional violent act that a reasonable person would likely know or would know would likely cause great bodily injury. Is there a difference in the degree of risk between the two provisions in the statute, and if so, does that matter, risk of injury? Between the use of force and the use of a deadly weapon. Exactly. Well, again, back to what the Court stated in Aguilar, that it's really there is no difference between the two. What matters is the force used. The weapon is the force of the weapon. It's kind of a tautology there. If someone puts an AK-47 to my head, as opposed to a pocket knife, I think it makes a difference to me in terms of the perception of risk. But ultimately, the charge would be the same. Well, I know. That's the problem. But it still would be moral turpitude, ultimately, morally turpitude-ness, if you will. But ultimately, again, the Court has a lot of options here. Again, we did request remand because there's a potential doubt here. To the extent there is any doubt, I believe the Court in People v. Aguilar addressed it, that there really is no difference. But again, if the Court does have any hesitation, it's that it should remand for the Board to make that determination in the first instance. Very good. Thank you very much for your argument. Thank you. Rebuttal. Thank you. So I'd like to make a few points. First of all, Mr. Solis is detained. He has been in detention for three years. And that is one of the reasons why remand is not appropriate in this case. If your options are remand or losing, which door does he choose? Well, sure. But in this case, we have a purely legal analysis. There's no question about reopening the record of conviction. The government has tacitly conceded that there's no ---- Well, if you want us to decide, why shouldn't we deem this a crime of moral turpitude? Well, for one thing, Aguilar treats these two offenses under the statute as separate  I don't think it's ---- Right. So they're separate offenses. But why doesn't this qualify under the Board's analysis of a crime of moral turpitude? What's the principal difference between the two analytically for our purposes? I think there's a difference between using a deadly weapon and using force that would lead a reasonable person to believe that a battery was likely to result. The Court in Uppall ---- Just a battery? I mean, we're talking about a battery that causes substantial injury. Well, it does not actually cause substantial injury. No, but the intent behind it is the same. Indeed, our Court's precedent says the intent is the same in these two. So why is somebody who has the intent to commit an act that will cause great bodily injury not morally turpitudinous, if that's a word? Because I don't think it's a fair characterization to say that there is specific intent to injure. I don't care about specific intent. Our Court has said the intent is the same for these ---- the multiple subdivisions of this statute. The intent is the same, and the intent is above negligence. It is not a purely negligent statute. It is not a purely negligent statute, but there also is no requirement of a subjective awareness of the risk of harm. So it falls somewhere below recklessness. And without that subjective awareness of the risk of harm, I don't think you can say that someone intends to cause an injury. What if ---- And I don't know, because I'm a district judge and not an appellate judge, and don't hear these cases, and candidly never have had one like this before, even sitting on the circuit. If this Court decides it and decides that it is a crime of moral turpitude, I assume then that the board is bound and could not itself independently in some future case of some other Petitioner or foreign national go the other way. Would that be correct, according to your understanding? Yes. And if so, wouldn't it make good sense to send this case back on the off chance ---- and I think it's quite slight ---- but on the off chance that the board exercising its own discretion and judgment would conclude, no, there may be ---- this is not categorically a crime of moral turpitude, and therefore provide the opportunity for others in your client's situation, convicted as a different and I think lesser offense, possibly have the opportunity to prevail in front of the board? Well, this Court in Fernandez-Ruiz considered whether remand was appropriate in a similar case under Ventura. And because it is a purely legal analysis of whether a crime is involving moral turpitude, and because there's no agency expertise involved in construing State criminal statutes, and because the record ---- But they could decide it the other way, couldn't they? At least arguably or in theory? I thought that's what the government was saying. Maybe I misheard. I think that the BIA would be bound by the case law. All right. So let's say we agree with you and we say this is not categorically a crime of moral turpitude. We'd still have to remand to afford the government a chance under the modified categorical approach to see whether the facts of this particular case might qualify. So tell me ---- There's no evidence in the record that Mr. Solis pled to any higher level of intent or conduct. And the government has tacitly conceded that. They have not pointed to any record in the ---- You don't think there's anything that ---- There's nothing in the ---- There's no judicially noticeable document that could supplement the record at this point? No. Okay. Can you give me a real world example of a conviction of this nature that wouldn't involve conduct that we ought to deem morally turpitudinous? Well, under UPAL, you need specific intent to injure. So if someone did not specifically intend to injure ---- Determine specific intent. That's what our decision in Guajira talked about. If this is going to lead to specific facts that inform me, that's fine. But I really don't want to get into a debate over whether something's, quote, specific intent or general intent. That's not the real world example I'm seeking. What kind of conduct would result in a conviction such as was suffered by your client that we wouldn't perceive as moral turpitude? Well, maybe something along the lines in the Lopez case where an object was swung at the victim. There was no physical contact with the victim and no injury. And it's unclear whether the defendant intended to injure the person by swinging the object. How could that ---- if it's unclear the person intended to swing the object. I got a baseball bat. I take a swipe at Judge Thomas. If it's unclear that I didn't know I was swinging a baseball bat at him, how do I get convicted? These cases are very fact specific, and it's up to the jury to determine the state of mind of the defendant. But the jury has to find the intent. I mean, if you look at Grajeda, it says the intent is the same as the intent of the other subparts here. I have trouble finding a real world example that could produce a conviction that wouldn't produce conduct that we'd probably deem morally turpitude. And I suppose the example would be if you form specific intent in a matter of seconds as opposed to a premeditated act, one might argue that. But I just have to look at it. I think probably the answer, if there's any, is in the California case law. But you can't think of anything else, as you stand here? Well... Unfortunately, Judge, I don't think Judge Clifton is that good a, you know, hitter, so he wouldn't. I think he'd miss me anyway. He hasn't seen me play, but he's got me pegged right. I see. That's pretty good. I can only point to, you know, the cases regarding swinging an object where there's no actual injury to the victim, and then cases involving, you know, driving a vehicle without any specific intent to hurt a particular individual. It's a tough issue. I mean, the government's pointed out that the board has said no specific intent, or no contact is necessarily required, so... Well, I think we've probably exhausted our hypotheticals. Thank you for your argument. I want to thank you especially for taking on the case pro bono. The court really appreciates that. It helps our analysis greatly. And I want to thank the government for its help and assistance as well. Thank you. The case, I just heard, will be submitted for decision.
judges: Carr, Thomas, Clifton